

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 MAY 17  AM 10: 44

STEPHAN HARRIS, CLERK
CHEYENNE

Benjamin J. Mann, Bar Number 7-5449
**HALLIDAY, WATKINS & MANN, P.C.**
376 East 400 South, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 355-2886
Fax: (801) 328-9714
File Number: 48663

Attorneys for: Flagstar Bank, F.S.B.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| BRADY MICHAELS, | **NOTICE OF REMOVAL** |
|---|---|
| **Plaintiff,** | Civil Numbers:  18- CV - 76 - S |
| v. | Honorable: |
| FLAGSTAR BANK, FSB, | |
| **Defendant.** | |

Defendant, Flagstar Bank, FSB, pursuant to 28 U.S.C. § 1446, Fed. R. Civ. P. 81(c) and

Local Rule 81.1 of the U.S. District Court for the District of Wyoming, submits this Notice of

Removal of the Complaint filed in the Fifth Judicial District Court for Big Horn County, Wyoming

as Case No. 2018000027.

The grounds for removal are: complete diversity of citizenship within the meaning of 28

U.S.C. § 1332(a)(1) and/or "federal question" jurisdiction within the meaning of 28 U.S. Code §

1331. Plaintiff is a resident of the state of Wyoming, and Defendant's principal place of business

is in the state Michigan.   Further, Plaintiff's claims pertain to real property with a value of more

than $75,000.   Plaintiff also asserts claims pursuant to several federal statutes, including 12 U.S.C. § 5536(a)(1)(B) and 12 C.F.R. § 1024.41.

The Complaint filed by Plaintiff in the above-referenced state court action is attached hereto as Exhibit "A".

Date this 15th day of May, 2018,     HALLIDAY, WATKINS & MANN, P.C.


_____
BENJAMIN J. MANN
Counsel for Defendant Flagstar Bank, FSB

## CERTIFICATE OF SERVICE

On the date below, a copy of the Notice of Removal, was filed with the Court, with the Fifth Judicial District Court, Big Horn County, Wyoming, and a copy of the documents were mailed to the following addresses, postage-prepaid.

Paul Knight
KNIGHT LAW OFFICES, LLC
P.O. Box 12138
Jackson, WY 83002

Date this 15th day of May, 2018,        HALLIDAY, WATKINS & MANN, P.C.

BENJAMIN J. MANN
Counsel for Defendant Flagstar Bank, FSB

# Exhibit A



Paul Knight, WY No. 5-2854
**KNIGHT LAW OFFICES, LLC**
P.O. Box 12138
Jackson, WY 83002
Tel: (307) 432-4014
Fax: (307) 201-1988

## IN THE DISTRICT COURT, FIFTH JUDICIAL DISTRICT, BIG HORN COUNTY, WYOMING

| | |
|---|---|
| **BRADY MICHAELS,** ) | **000027** |
| ) | No: 2018 ——————— |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | **JURY TRIAL REQUESTED** |
| **FLAGSTAR BANK, F.S.B.** ) | |
| ) | Clerk of District Court |
| ) | |
| Defendant. ) | FILED   MAR 2 3 2018 |
| | by _____ SERENA K. LIPP |

### STATEMENT OF THE CASE

1.      Plaintiff, Brady Michaels, is a resident of Big Horn County, Wyoming and is the

owner of real property located at 610 West F Street, Basin, Wyoming 82410.

2.      Defendant Flagstar Bank, FSB is and was at all times referenced herein, acting as

a servicer on a Plaintiff's mortgage on the described property. Defendant is a federal savings

bank headquartered in Troy, Michigan. Defendant originates mortgage loans, services mortgage

loans, and provides deposits and other fee-based services to consumers and businesses.

3.      As a result of the loss of his employment, Plaintiff fell behind on his mortgage

payments in August 2016. In October 2016, Plaintiff contacted his mortgage company

(Flagstar) to explore options to bring his mortgage current and stay in his home.

Defendant sent a loss mitigation packet to Plaintiff and asked him to submit a hardship

1

letter. Plaintiff submitted the completed loss mitigation packet immediately after receiving it.and contacted Flagstar by phone on a regular basis to check the status.

4.      Towards the end of December 2016, Plaintiff contacted  Flagstar by phone to ask enquire as to the status of his loan modification. After being placed on hold for no less than 20 minutes Plaintiff was verbally told that the information sent to them was not complete, and he would be receiving a letter in the mail stating exactly why it was incomplete. One week later, Plaintiff received a letter which stated the unemployment financial statement he provided was not acceptable. Plaintiff then obtained a bank statement from  US Bank showing the unemployment account and sent it to Flagstar via fax.

5.      Two weeks went by with no explanation or communication from Flagstar as to whether or not Plaintiff was approved for loan modification.  Plaintiff made numerous attempts by phone to get an explanation or an answer; he was again told that the application was incomplete. When Plaintiff asked why, he was told a letter would be sent stating the reasons.

6.      While waiting to receive the letter stating the reasons the application was incomplete, Plaintiff received correspondence from the law firm of Halliday, Watkins. and Mann, PC, advising of Flagstar's intent to foreclose on Plaintiff's home. Plaintiff immediately contacted Flagstar and was advised that the foreclosure proceeding was just a formality and that Flagstar's loss mitigation department was still working with Plaintiff for loan modification.

7.      Days later, Plaintiff received a letter stating the reason the application was not deemed complete was that the documents Plaintiff had provided were now outdated. Plaintiff attempted to contact Flagstar to determine what was out dated so he could resolve the issue. After numerous phone calls over numerous days and speaking with several people

2

at Flagstar, it was finally explained to him that the time period for all of his documents to be up to date had expired. Plaintiff was asked to re-submit the entire loss mitigation packet again, which he did.

8.      Plaintiff continued to receive letters relating to a potential foreclosure. Ultimately Plaintiff was advised that a foreclosure sale date had been scheduled for April 26, 2017. Flagstar continued to advise Plaintiff that the loss mitigation department was working on the loan modification. He was also advised the foreclosure sale date would remain until the loan modification was approved. Beginning two weeks before the foreclosure sale date, Plaintiff called Flagstar every day. To speak with a representative at Flagstar it took anywhere from 20- 60 minutes each time Plaintiff called. The people Plaintiff spoke with stated that the loss mitigation department had a high volume of paperwork, but they would get to it. The day before the foreclosure sale, Plaintiff contacted Flagstar and asked them where they were in the loan modification process, the person Plaintiff spoke with stated that the packet was incomplete, and a letter was on the way with a new packet. When Plaintiff explained that a foreclosure sale was scheduled the following day, the representative could not find the foreclosure sale in their records.. Plaintiff called again to speak with different person to make certain the foreclosure sale was no longer going forward, he was told that the foreclosure would go forward unless he could provide all of the arrears payments to the attorney handling the foreclosure before 9:00 AM the next morning. Plaintiff called the attorney's office handling the foreclosure, and was told the same thing. Plaintiff was unable to pay all of the arrears prior to the foreclosure sale so the foreclosure proceeded.

9.      On May 1, 2017, Plaintiff received an email from Cheryl Reid (loss mitigation specialist) stating that she had received Plaintiff's Loss Mitigation documents, and she would be Plaintiff's contact for the Loss Mitigation Process. Plaintiff received and sent back an

authorization form for the Wyoming Housing Network to communicate directly with Flagstar. Through Wyoming Housing Network the entire packet was once again submitted via email. On May 30th, 2017 Plaintiff received an email from Flagstar stating that in order for them to process the file for the loss mitigation , the mortgage loan number must be in the subject field of the email even though every piece of paper in the loss mitigation packet had the loan number on it. Nonetheless, Plaintiff immediately resubmitted the entire packet via email with the Loan number in the subject field of the email. Plaintiff contacted Flagstar no less than twice a week for the next three months, and was told over and over that they had everything, and that it was just waiting to be reviewed in loss mitigation. At one point Flagstar even told Plaintiff what they thought his payment amount would be when the loan modification was done.

   **10.**  On September 10th, 2017, Plaintiff discovered that his home was being auctioned by Auction.com. Plaintiff took time off from work to try and find out what was going on and to try to resolve it. Plaintiff called Flagstar but could not reach anyone in Loss Mitigation and Foreclosure. He was able to speak with some sort of representative who informed him he was beyond the redemption period for his property, but he would still be able to work with Loss Mitigation because they showed his paperwork had been received, but had not been reviewed due to a high volume of modification requests. Plaintiff was told that he would be receiving an answer from them soon. . Plaintiff explained that he needed an answer immediately because the auction on his home was ending the next day. He was put on hold for 27 minutes, the representative who responded advised Plaintiff that if he wanted to stay in his home he would have to obtain legal counsel. Plaintiff asked about her earlier statement of his paperwork being in loss mitigation, she stated that Flagstar advised her to have no more conversations with Plaintiff.

4

## FIRST CAUSE OF ACTION

**Flagstar Failed to Review Plaintiff's Loss Mitigation Applications in a Reasonable Amount of Time (12 U.S.C. § 5536(a)(1)(B)).**

11.     Plaintiff incorporates paragraphs 1 through 10, inclusive, as if set forth in full.

12.     Borrowers apply for the loss mitigation programs offered by the owners or guarantors of their loans through their mortgage servicer. As the administrator of investors' loss mitigation programs, Defendant Flagstar is responsible for: (1) reviewing documents submitted by borrowers to determine if their loss mitigation applications are complete, and (2) reviewing complete loss mitigation applications to determine if borrowers qualify for a loss mitigation program.

13.     Flagstar, like many servicers, experienced a dramatic increase in the volume of loss mitigation applications in connection with the foreclosure crisis. Flagstar was not equipped to handle the influx. Flagstar had insufficient staff, no written policies, no quality assurance function, and inadequate servicing systems

14.     This combination of the foreclosure crisis and years of inadequate resources resulted in Flagstar taking an unreasonable amount of time to review loss mitigation applications. Flagstar failed to comply with industry guidelines for the timely review and decisioning of loss mitigation applications. For instance, Flagstar's internal reports and data show that it routinely took more than 90 days to decision complete loss mitigation applications. Guidelines from GSEs require servicers to decision complete loss mitigation applications in 30 days.

15.     Flagstar failed to review Plaintiff's loss mitigation application documents before they expired under investor guidelines.  Flagstar failed to make a decision on Plaintiff's loss

mitigation applications prior to referring Plaintiff to foreclosure. The failure to review loss mitigation applications in a reasonable amount of time harmed Plaintiff. Defendant rejected Plaintiff's loss mitigation application for reasons outside of Plaintiff's control, requiring Plaintiff to spend time and money to reapply, or forego a loss mitigation evaluation. Flagstar deprived Plaintiff—whether eligible for loss mitigation or not—of his ability to make an informed choice about how to retain or dispose of his home.

16.      Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury that is not reasonably avoidable and if the substantial injury is not outweighed by countervailing benefits to consumers or to competition. Flagstar's acts and practice of failing to review Plaintiff's  loss mitigation application in a reasonable amount of time caused substantial injury to Plaintiff that was not reasonably avoidable or outweighed by any countervailing benefit to consumers or to competition including the foreclosure and loss of Plaintiff's home.

### SECOND CAUSE OF ACTION

### Flagstar's Actions Violate the Mortgage Servicing Rule Resulting in Wrongful Foreclosure (12 C.F.R.§ 1024.41)

17.      Plaintiff incorporates by reference paragraphs 1 through 16, inclusive, as if set forth in full.

18.      *Deficient Acknowledgment of Initial Applications* Section 1024.41(b) of the Mortgage Servicing Rule requires Flagstar to acknowledge receipt of any loss mitigation application received 45 days or more before a foreclosure sale by providing a written notice, referred to as the "acknowledgement notice," to borrowers within 5 business days of receipt of the loss mitigation application. 12 C.F.R. § 1024.41(b)(2)(i)(B).

6

19.    The acknowledgement notice must state that: (A) Flagstar acknowledges receipt, (B) whether the application is complete or incomplete, (C) if the application is incomplete, the additional documents and information that the borrower must submit, and the date by which those documents must be submitted, and (D) that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options. 12 C.F.R. § 1024.41(b)(2)(i)(B).

20.    . Flagstar failed to comply with Section 1024.41(b) for loss mitigation applications received 45 days or more before a foreclosure sale by failing to notify Plaintiff, in writing, of all information required by Section 1024.41(b)(2)(i)(B) within 5 business days of receiving his loss mitigation application.

21.    *Deficient Evaluation of Complete Applications.*  Sections 1024.41(c) and (d) of the Mortgage Servicing Rule require Respondent to: (1) decision complete loss mitigation applications received more than 37 days before a foreclosure sale within 30 days of receipt, 12 C.F.R. § 1024.41(c)(1); (2) provide written notice, referred to as the "evaluation notice," to borrowers within 30 days of receiving the complete loss mitigation application stating Respondent's determination of which loss mitigation options, if any, it will offer to the borrower, 12 C.F.R. § 1024.41(c)(1)(ii); and (3) if the application is denied for any loan modification option, state the specific reason or reasons for the denial of the loan modification option, 12 C.F.R. § 1024.41(d).

22.    Flagstar failed to comply with Section 1024.41(c) for Plaintiff's complete loss mitigation applications received more than 37 days before the foreclosure sale by: (1) failing to decision complete Plaintiff's loss mitigation applications within 30 days of receipt; (2) failing to notify Plaintiff, in writing, of Defendant's determination of which loss mitigation options, if any, it would offer to Plaintiff within 30 days of receiving the complete

7

loss mitigation application; and (3) failing to provide the specific reason or reasons for the denial of Plaintiff's loan modification option.

23.     *Failure to Notify Plaintiff of his Right to Appeal* Section 1024.41(c) of the Mortgage Servicing Rule requires Flagstar to notify borrowers eligible for appeal under Section 1024.41(h) of their appeal right in the evaluation notice. 12 C.F.R. § 1024.41(c)(1)(ii). Flagstar is required to include the following information in the evaluation notice: (1) Plaintiff has the right to appeal the denial of any loan modification option; (2) the amount of time the Plaintiff has to file such an appeal; and (3) the requirements for making an appeal. 12 C.F.R. § 1024.41(c)(1)(ii). Flagstar failed to comply with Section 1024.41(c) by failing to notify Plaintiff that he had the right to appeal the denial of any loan modification option

24.     *Failure to Maintain Reasonable Policies and Procedures* The Mortgage Servicing Rule requires Flagstar to maintain policies and procedures reasonably designed to ensure the bank can (1) provide accurate and timely disclosures to borrowers, and (2) comply with the acknowledgement notice requirements set forth in Section 1024.41(b)(2)(i)(B) of the rule. 12 C.F.R. §§ 1024.38(a), (b)(1)(i), (b)(2)(iv).

25.     Flagstar has not maintained policies and procedures reasonably designed to ensure the bank can provide accurate and timely disclosures to borrowers. Flagstar has not maintained policies and procedures reasonably designed to ensure the bank can provide timely and accurate acknowledgement notices.

26.     Defendant's acts or practices as described in paragraphs 61-73 violate the Mortgage Servicing Rule. The Mortgage Servicing Rule is a Federal consumer financial law. 12 U.S.C. §§ 5481(14). It is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law."

12 U.S.C 5536(a)(1)(A). Therefore, Defendant's acts or practices as described in paragraphs 61-73 also violate the CFPA. *Id.*

27.     Defendant's actions and failure to act as alleged herein act as a bar to the lawful foreclosure of Plaintiff's property. As a result, Defendants foreclosure of Plaintiff's property is wrongful and Plaintiff is entitled to a judgment quieting title in the property to Plaintiff. Additionally, Plaintiff has suffered actual damages, including attorney fees, costs and expenses, in bringing this action to address the wrongful foreclosure as well as rent, storage fees and expenses resulting from the wrongful foreclosure. Additionally, Plaintiff has suffered severe emotional distress as a result of Defendant's wrongful actions.

WHEREFORE, Plaintiff requests the Court enter the following relief:

1.     An order setting aside the wrongful foreclosure of Plaintiff's property located at 610 West F Street, Basin, WY 82410 and quieting title in Plaintiff;

2.     Damages for Wrongful Foreclosure according to proof;

3.     Damages for Defendant's violation of 12 U.S.C. § 5536(a)(1)(B)

4.     Damages for Defendant's violation of 12 C.F.R.§ 1024.41

5.     For such other and further relief as the Court deems just and appropriate.

Dated this __22__ day of March, 2018

                                KNIGHT LAW OFFICES, LLC

                                By: Paul Knight, WY No. 5-2354
                                Attorney for Plaintiff
                                PO Box 12138
                                Jackson, WY 83002
                                (307) 432-4014
                                (307) 201-1988 fax